# Lehigh & New England R. R. Co., Appellant, *v.* Public Service Commission et al.

*Railroads—Rates—Public Service Commission—Appeals—Public Service Commission Act of June 26, 1913, P. L. 1374.*

1. On an appeal to the Superior Court from a decision of the Public Service Commission fixing a railroad rate, the final decree is not the only matter to consider.

2. Such an appeal opens up all questions presented to the commission or arising under the complaint relating to the contested rate. These questions are not to be taken up piecemeal.

3. The Public Service Commission Act of June 26, 1913, article V, section 3, P. L. 1374, gives the time when a final order relating to a rate shall begin to operate.

*Railroads—Rates—Federal control—Effect of transportation—Act of Congress of 1920, 41 Stat. 456—Intrastate and interstate commerce—Pennsylvania Public Service Commission.*

4. Prior to the Transportation Act of 1920 federal authority could only interfere with state control to prevent discrimination

494  LEHIGH & N. E. R. R. CO., Appel., *v.* PUB. SER. COM. et al.

Syllabus—Statement of Facts.          [277 Pa.

against interstate commerce aimed at persons or localities; it could not prescribe intrastate rates, nor assume general regulation of intrastate commerce.

5. The state cannot regulate downward rates issued under section 15 (a) of the Interstate Commerce Act.

6. After the passage of the Transportation Act of 1920, which returned to the state the control of intrastate rate regulation, the control of the Interstate Commerce Commission was further extended (a) to establish a level of rates which would afford the compensation necessary to permit the maintenance of an adequate national railway system during the guarantee period prescribed by the act, and (b) to remove discriminations against interstate commerce as a whole arising from the enforcement by state authorities of a different level of rates for a similar purpose. But under this control the Interstate Commerce Commission must leave appropriate discretion to the state authorities to deal with intrastate rates as between themselves on the general level which the commission has found to be fair to interstate commerce.

7. Under the Transportation Act, the state through the state commission has exclusive power and plenary control of the rates after the expiration of the period from March 1 to September 1, 1920, saving the limitations relating to interstate commerce.

8. Where, prior to March 1, 1920, the Interstate Commerce Commission reduces an intrastate rate, such reduced rate for the six months guarantee period to September 1, 1920, is, under section 208 (a) of the Transportation Act, the lawful rate, and the Pennsylvania state commission in enforcing such rate in proceedings instituted during the guarantee period, is not reducing a rate but is enforcing a corrected one. In so doing it is acting within its powers.

9. In such case there is nothing for the Interstate Commerce Commission to approve, and the parties may immediately prosecute their petition for reparation adjustment.

Argued March 12, 1923.  Appeal, No. 244, Jan. T., 1923, by plaintiff, from judgment of Superior Court, Oct. T., 1922, No. 15, dismissing appeal from order of the Public Service Commission, Complaint Docket 3461 of 1920, in case of Lehigh & New England Railroad Co. v. Public Service Commission and Pennsylvania Power & Light Co., Intervenor. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from Superior Court.    See 79 Pa. Superior Ct. 540.

The facts are stated in the opinion of the Supreme Court. Judgment affirmed.    Plaintiff appealed.

*Error assigned,* inter alia, was judgment of Superior Court, quoting it.

*Wm. Clarke Mason,* with him *Paul C. Hamlin* and *William Jay Turner,* for appellant.—In view of section 208a of the Federal Transportation Act of 1920, the Public Service Commission of Pennsylvania did not have jurisdiction to entertain a complaint filed during the guaranty period, praying for the reduction of an intrastate freight rate of an interstate carrier, where the complaint failed to show the prior approval of such reduction by the Interstate Commerce Commission: Northern Pacific Ry. v. Washington, 222 U. S. 370; Southern Ry. v. Reid, 222 U. S. 424; Chicago, etc., R. R. v. Elevator Co., 226 U. S. 426; Adams Express Co. v. Croninger, 226 U. S. 491.

The operation of the Transportation Act in depriving the state commissions of power to regulate intrastate rates during the guaranty period is analogous to the operation of the Federal Bankruptcy Act upon the state insolvency: Potts v. Mfg. Co., 25 Pa. Superior Ct. 206; Peckham's Est., 35 Pa. Superior Ct. 330.

If jurisdiction has once been established, it is not defeated by subsequent events: Mollan v. Torrance, 9 Wheaton 537; Gibson v. Bruce, 108 U. S. 561; Connolly v. Taylor, 2 Peters 556.

Other courts have held that section 208a prevented the reduction of intrastate rates by state authorities prior to September 1, 1920, without the approval of the Interstate Commerce Commission: Public Service Comm. v. N. Y. C. R. R., 230 N. Y. 149; Atlantic Coast Line Ry. v. R. R. Commission, 281 Fed. 321.

The burden of proof rested on the power company and was not met.

The state commission's order reducing the rate in question was confiscatory.

*George Wharton Pepper,* with him *Thomas J. Perkins* and *Butz & Rupp,* for intervening appellee.—Prior to the period of federal control, when the United States government as a war measure undertook the operation of the railroad systems of the country, the several states had full power to regulate intrastate transportation rates within their respective borders, subject only to authority in the Interstate Commerce Commission to prevent discriminations against persons and localities engaged in interstate commerce: Minnesota Rate Cases, 230 U. S. 352; Houston & Texas Ry. v. United States, 234 U. S. 342.

During the period of federal control the President was authorized to initiate both intrastate and interstate rates, subject to review as to their reasonableness by the Interstate Commerce Commission: Northern Pac. Ry. v. North Dakota, 250 U. S. 135.

The Transportation Act of 1920 restored to the states their former jurisdiction (suspended during federal control) to prescribe intrastate transportation rates, subject to the authority of the Interstate Commerce Commission to review such action (a) in the case of a reduction of a rate during the guaranty period and (b) to remove discriminations against interstate commerce as a whole caused thereby: Com. v. R. R., 42 Pa. Superior Ct. 232; New York v. Interstate Commerce Comm., 42 Pa. Superior Ct. 239.

Neither in the Transportation Act nor elsewhere has Congress assumed to clothe the Interstate Commerce Commission with jurisdiction to determine the reasonableness of an intrastate rate as such and an attempt to do so would have been unconstitutional: State of Texas v. Eastern Texas R. R., 42 Pa. Superior Ct. 281.

The Pennsylvania Public Service Commission had full and complete jurisdiction under the Public Service Company Law to make the order appealed from and nothing contained in that order is prohibited by any provision of the Federal Transportation Act of 1920.

There is no attempt in the Transportation Act to fix the rates to be applied to intrastate transportation for the two years following March 1, 1920. The only limitation on the power of the states to deal with such rates after the guaranty period is a prohibition against burdening interstate commerce, including provision for procedure to enable the Interstate Commerce Commission to remove such a burden if imposed.

The question of the burden of proof is not material to the determination of this appeal.

There is no basis for holding that the Pennsylvania commission's order was confiscatory. On the other hand, it was shown that the rate fixed allows a very liberal return.

*John Fox Weiss* and *Frank M. Hunter,* for Public Service Commission, appellee.

OPINION BY MR. JUSTICE KEPHART, April 30, 1923:

This is an appeal from an order of the Superior Court affirming the action of the Public Service Commission reducing a rate for intrastate shipments of coal. The opinion of Judge LINN (79 Pa. Superior Ct. 540) recites the facts, and decides finally many questions involved; we will consider those on which this appeal was allowed. The main question concerns the jurisdiction of our state commission, under section 208 (a) of the Federal Transportation Act of 1920, over a complaint against an intrastate rate for the guarantee period fixed by section 209, and its power to make any reduction order without first being authorized by the Interstate Commerce Commission.

During federal control, this carrier filed an intrastate rate of forty cents a net ton, affecting intervening appellee. Complaint was filed at Washington prior to March 1, 1920, the state commission's powers over intrastate movements having been suspended during the period of federal control. The Transportation Act of 1920 returned to the state the control of intrastate rate regulation; Congress, however, fixed a guarantee period, from March 1, to September 1, 1920, within which existing rates could not be disturbed without the approval of the Interstate Commerce Commission. Appellee, after March 1st, filed an additional protest with the Pennsylvania commission covering the same rate previously complained against. The State had then resumed regulatory control of these rates. The Pennsylvania commission, October 25, 1921, found the fair and reasonable rate from March 1, 1920, to August 25, 1920, to be twenty-five cents per ton; and that, after August 25th, with the horizontal increase of forty per cent applicable to group rates or levels (see Increase Rate Case known as "Ex Parte 74," 58 I. C. C. 220), thirty-five cents was the fair rate. This latter rate, at the carrier's request, was continued to December 17, 1921, when the rate became effective for the future by the final order of the commission.

The Public Service Act, article V, section 3, governs the time when the final order shall begin to operate. It reads, "When the commission shall determine, after hearing......upon complaint, that the rate......[is] unjust......[it shall] determine and prescribe by specific order the......reasonable rate......*to be thereafter established, demanded, exacted, charged or collected.*" This fits in harmoniously with reparation adjustments, and other matters in the act. The order of October 25, 1921, provided for rates after December 17, 1921; it included the findings of fact upon which the order was based; these covered the time from March 20, 1920, to October 25, 1921. By "specific order," respondent was to

file a new tariff to supersede the rate in effect prior to December 17, 1921.

The appeal to the Superior Court opened all challenged findings relating to the contested rate; the final decree was not the only matter to consider. There were included not only the basis for the rate from December 17th onward, but retroactively the basis for the finding that, from December 17, 1921, back to March 1, 1920, the rate was unjust if the commission so found it. Questions on the findings are not to be taken up piecemeal,— that is for the future under this appeal, and the reasonableness of the past rate on an appeal from a reparation award, though in the latter the commission may limit recovery to any damage actually sustained. See Mr. Justice SIMPSON's opinion in N. Y. & Pa. Co. v. N. Y. C. R. R. Co., 267 Pa. 64. The Superior Court did not err in considering all questions presented to the commission or arising under the complaint.

The Transportation Act, while authorizing the Interstate Commerce Commission to initiate, modify, establish and adjust rate structure affecting carriers in groups or zones (see section 15 (a) of the Interstate Commerce Act, aided by paragraphs 2, 3 and 4 of section 422 of the Transportation Act), and such power was duly exercised by the commission by order Ex Parte 74, above referred to, the act and orders issued thereunder revived in the State the regulatory control over intrastate rates, subject of course to the limitations imposed by the act. This appears not only from the preceding legislation and judicial decisions, wherein it was held federal authority could interfere with state control only to prevent discrimination against interstate commerce (Minnesota Rate Cases, 230 U. S. 352, 402; Houston, East and West Texas Ry. Co. v. United States, 234 U. S. 342; Missouri, Kansas & Texas Ry. Co. of Texas v. Harris, 234 U. S. 412, 419; Carey v. State of South Dakota, 250 U. S. 118; Corn Products Refining Co. v. Eddy, 249 U. S. 427, 435), but also from the sections of the Transportation Act, de-

pended on by appellant for a contrary view. Section 208 (a) provides that rates shall continue in effect under the act until changed by state or federal authority. "Section 15 (a)," says Chief Justice TAFT in Railroad Commission of Wisconsin et al. v. Chicago, Burlington & Quincy Railroad Company, 42 Sup. Ct. Rep. 232, 236, "confers no power on the commission to deal with intrastate rates. What is done under that section is to be done by the commission 'in the exercise of its powers to prescribe just and reasonable rates,' i. e., powers derived from previous amendments to the Interstate Commerce Act, which have never been construed or used to embrace the prescribing of intrastate rates." And, finally, "It is said that our conclusion gives the commission unified control of interstate and intrastate commerce. It is only unified to the extent of maintaining efficient regulation of interstate commerce under the paramount power of Congress. It does not involve general regulation of intrastate commerce. Action of the Interstate Commerce Commission in this regard should be directed to substantial disparity which operates as a real discrimination against, and obstruction to, interstate commerce, and must leave appropriate discretion to the state authorities to deal with intrastate rates as between themselves on the general level which the Interstate Commerce Commission has found to be fair to interstate commerce." See State of New York et al. v. United States and Interstate Commerce Commission, 42 Sup. Ct. Rep. 239.

These two cases hold that the State cannot regulate downward rates issued under section 15 (a), etc. That the levels for the rate structure applicable throughout the State or given part thereof cannot be lowered, nor can rates be so dealt with as to affect adversely the integrity of the entire structure or such part of it as to materially injure or have a tendency to affect the whole. This holding is in keeping with the purpose of the act. It was to provide sustaining revenue to carriers for a given period

immediately following the war and federal control, with any deficiency to be paid by, the nation. But future investigation of any particular rate schedule as it affected particular localities or persons, was left open,—inter-state to that commission, and intra- to the state.

After the act, the control by the Interstate Commerce Commission was (1) to establish a level of rates which would afford the compensation necessary to permit the maintenance of an adequate national railway system during the prescribed period; (2) to remove discriminations against interstate commerce as a whole arising from the enforcement by state authorities of a different level of rates for a similar purpose; (3) to prevent discriminations against interstate traffic, aimed at persons or localities, by any intrastate rate schedule. See Texas v. Eastern Texas R. R. Co., 42 Sup. Ct. Rep. 281, and section 13 of the Interstate Commerce Act, amended by the Transportation Act, section 416. The theory that the per ton charge collected was a congressional fixed rate, not subject to change, especially by the State, cannot be sustained. The Transportation Act provides otherwise. Presidential rates fixed during federal control, were not subject to any such immunity. Section 10, Act of Congress, 40 Stat. 456, c. 25.

Under the Transportation Act and its sovereign power, the State, through the state commission, had exclusive power and plenary control of the rate after September 1, 1920, saving the exceptions mentioned, and as to these, exceptions, and independent action would be necessary to assert rights thereunder.

The state commission being clothed with authority, was it otherwise limited by the act of Congress? If the State has jurisdiction to reduce a rate, then the complaint could be heard at any time, the reduction, if any, to be subject to approval by the federal commission under 208 (a).

Before discussing the state's authority over rates during the guarantee period (March to September), under

section 208 (a), we will ascertain what happened to this particular rate from the date of its promulgation under the federal commission.

As stated, prior to March 1, 1920, complaint was filed against this rate with the Interstate Commerce Commission; after hearing, forty cents was declared unjust and unreasonable, and twenty-five cents per ton was fixed as the rate from the time it had been effective up to March 1, 1920, when federal control and the Interstate Commerce Commission's jurisdiction ceased. These proceedings are properly before us on this record.

Section 208 (a) provides all rates which, on February 29, 1920, are "in effect," shall continue. The rate guaranteed during the six months following is the lawful rate, or such tariff found by the Interstate Commerce Commission to be just and reasonable on the effective date of the guarantee period (March 1st). That rate controlled the carrier, the state commission and the state appellate courts reviewing the question. By the action of the federal commission sustaining this appellee's complaint before it, twenty-five cents a ton was the rate fixed to continue through the guarantee period, unless changed as provided by the Transportation Act. The state commission, acting under 208 (a), did not reduce a rate, but rather enforced the corrected rate. Twenty-five cents per ton was, in legal contemplation, written into the tariff from the beginning, the former rate being wholly annulled.

If we should be in error in so holding, appellant is still in no better position. What this court now considers is the action of the Superior Court in sustaining the commission's finding as to a reasonable rate during the guarantee period. Section 208 (a) does not prohibit a complaint from being filed against a rate established during federal control for the guarantee period. It does prohibit a reduction in rates without the approval of the Interstate Commission. The Superior Court found from the record sufficient evidence to sustain the state com-

mission's order, and that the reduction was not confiscatory. Without considering the proceedings before the Interstate Commerce Commission on the complaint there filed, and, assuming the state's action was on a rate not before assailed, if we affirm this order the carrier is not injured until the state commission's order is approved by the federal commission, and afterwards only on an order of reparation. Carriers are afforded every opportunity contemplated by section 208 (a) to contest before the commissions and the courts the complaint filed against the rate, but, when the order is here finally approved, the federal authorities must also act before the reduction can be made effective. It is not necessary to state action, that a conditional approval from Washington be first obtained. Section 208 (a) reads, "No such rate......shall be reduced......unless the reduction ......is approved." There must be prior action somewhere to secure an approval. The act of Congress intended the Interstate Commerce Commission to act as a reviewing body over rates during the guarantee period, determining whether the reduction is a proper one, having in view the purposes of the act.

As the question impresses us, the only lawful rate in existence during the period of federal control, and during the guarantee period, was twenty-five cents a ton; it continued until changed by state and federal authority. If this is so, there is nothing for the Interstate Commerce Commission to approve. The parties are now at liberty to prosecute their petition for reparation adjustment.

If, however, counsel deem it expedient to seek the Interstate Commerce Commission's approval of the state commission's findings covering the period in question, we do not wish anything here said to embarrass their effort.

The Superior Court has determined all other questions. Its order is affirmed.