# New York & Pennsylvania Co. v. New York Central R. R. et al., Appellants.

*Carriers—Common carriers—Rates—Reparation award—Public Service Commission—Failure to appeal from decision—Res judicata—Acts of July 26, 1913, P. L. 1374; June 3, 1913, P. L. 779.*

1. The Public Service Act of July 26, 1913, P. L. 1374, as amended by the Act of June 3, 1915, P. L. 779, gives the right to a complete judicial review on independent judgment where a company is aggrieved by an order of the Public Service Commission, through an appeal to the Superior Court, and thence by special al-

lowance to the Supreme Court, and, if no appeal is taken from the decision rendered, the action of the commission is conclusive in a subsequent proceeding for reparation covering the excessive charge demanded and paid.

2. Where a party makes a defense before a tribunal competent to hear the cause, upon a question either of fact or law, and the conclusion is adverse, he must pursue the statutory remedy, otherwise he is bound by the decision rendered.

3. Where on a petition by a carrier to the Public Service Commission an issue is directly raised and decided that the commission had power to determine the reasonableness of intrastate rates in the guarantee period between March 1 and September 1, 1920, without the joinder of the Interstate Commerce Commission, and no appeal is taken from the decision, such question cannot be raised subsequently in a reparation suit to recover the amount of an award.

4. Where the state commission makes no attempt to reduce a rate during the guarantee period but does correct a charge based on an admittedly illegal premise to make it conform to one determined as reasonable prior to federal control, the carrier cannot complain of such action in a subsequent reparation proceeding; and especially is this the case where no appeal was taken from the decision of the commission.

Argued March 17, 1924. Appeal, No. 169, Jan. T., 1924, by defendants, from order of C. P. Clinton Co., Jan. T., 1923, No. 5, making absolute rule for judgment for want of a sufficient affidavit of defense, in case of New York & Pennsylvania Company v. New York Central Railroad Company and the Pennsylvania Railroad Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit under article V, section 5, of the Public Service Company Act to recover award of reparation.

Rule for judgment for want of a sufficient affidavit of defense. Before BAIRD, P. J.

The opinion of the Supreme Court states the facts.

Rule absolute. Defendants appealed.

*Error assigned* was, inter alia, order, quoting record.

*Henry Wolfe Bikle, Parker McCollester, Seth T. Mc-Cormick, Jr.,* and *Henry Hipple,* for appellants.—The failure of appellants to appeal to the courts from the decision of the Public Service Commission, in its complaint docket No. 3206, did not preclude them from availing themselves of the defense to the action brought by appellee to enforce the reparation order of the commission in its reparation docket No. 4738 of 1922: Newport & Shermans Val. R. R. v. P. S. C., 75 Pa. Superior Ct. 28; N. Y. & Penna. Co. v. N. Y. Cent. R. R., 267 Pa. 64; Greensburg Boro. v. P. S. C., 268 Pa. 177.

The issues raised by appellants' affidavits of defense were not expressly raised in complaint docket No. 3206 and were not among the issues which the commission undertook expressly to decide: N. Y. & Penna. Co. v. N. Y. Cent. R. R., 267 Pa. 64; Lehigh & New England R. R. v. P. S. C., 277 Pa. 493.

The issues which are raised by appellants' affidavits of defense could not properly have been before the commission in complaint docket No. 3206 and could not have been made the subject of an appeal from the commission's decision in that case: St. Clair Boro. v. Souilier, 234 Pa. 27; Quinn v. R. R., 219 Pa. 24.

By reason of section 208 (a) of the Transportation Act of 1920, it is a complete defense to appellee's suit under article V, section 5, of the Public Service Company Law to enforce an order for reparation made by the Public Service Commission on shipments moving between March 1 and September 1, 1920, that the rates charged on these shipments were in force on February 29, 1920, that they had been held to be lawful and reasonable by the Interstate Commerce Commission as of that date, and that the approval of the Interstate Commerce Commission to a reduction in the rates or to the payment of reparation had not been secured: Railroad Commission of Wisconsin v. R. R., 257 U. S. 563; Texas v. R. R., 258

U. S. 204; Northern Pac. Ry. v. North Dakota, 250 U. S. 135.

The prohibition, by section 208 (a) of the Transportation Act of 1920, of a reduction in rates during the guaranty period without the approval of the Interstate Commerce Commission is a limitation upon the power of the Public Service Commission to award reparation to the appellee on its shipments moving during the guaranty period and upon the power of the court to give judgment upon such an award.

*T. R. White* and *B. F. Geary,* for appellee.—The only question raised by the affidavit of defense was decided by the Public Service Commission in the original proceeding, and by their failure to take an appeal therefrom appellants are now concluded: N. Y. & Penna. R. R. v. R. R., 267 Pa. 64.

The Transportation Act of 1920 does not provide that a reduction of purely intrastate rates, which do not affect interstate commerce, must be approved by the Interstate Commerce Commission: State of Texas v. R. R., 258 U. S. 204; Lehigh & New England R. R. v. P. S. C., 277 Pa. 493.

A reparation order made by a state commission after September 1, 1920, is not subject to the approval of the Interstate Commerce Commission.

The finding by the Public Service Commission that the rate in suit was unlawful was not a reduction of that rate within the meaning of the Transportation Act of 1920: Lehigh & New England R. R. v. P. S. C., 277 Pa. 493.

OPINION BY MR. JUSTICE SADLER, July 8, 1924:

The New York Central Railroad Company was en-gaged in the transportation of coal from the Munson and Hawk Run Mining Districts to Bald Eagle Junction, from which place it was moved by the Pennsylvania Railroad Company to Lock Haven, all of the points named

being within the State of Pennsylvania. In 1916, certain tariffs were filed by the former with the Public Service Commission, and in July, 1917, after protest, an order was made requiring the first named railroad to reduce the charge for transportation to forty-five cents. The Public Service Act gives the right to a complete judicial review on independent judgment where a company is aggrieved by any order of the commission, through an appeal to the Superior Court, and thence by special allowance to this court, and, where no appeal is taken from the decision rendered, the action of the commission is conclusive in a subsequent proceeding for reparation covering the excessive charge demanded and paid: N. Y. & Pa. Co. v. N. Y. C. R. R. Co., 267 Pa. 64. Subsequent to federal control, in obedience to the statutory direction, this court approved the commission's order, subject, of course, to the limitations imposed by the Public Service Act,—not material here to be discussed. We accepted, as bound to do, the rate fixed by the commission, and ratified by the Superior Court, as a reasonable one for the service rendered: N. Y. & Pa. Co. v. N. Y. C. R. R. Co., supra. Later, in December of 1917, the commission ordered a new rate of eighty cents, between the points already referred to, to be divided between the New York Central and Pennsylvania railroads.

On December 28, 1917, by proclamation of the President, duly authorized by act of Congress, and made necessary by the war emergency, control of all railroads was placed in the hands of the director general. In pursuance of the authority granted to him, a through rate of one dollar was named on June 25, 1918. On July 11, 1919, the charge was advanced, by virtue of general order No. 28, to $1.10, and this remained in effect during the further term of federal administration, which ended February 29, 1920.

The order, so authorized permitting the increase on the basis of the tariff filed by the railroads in 1916, but it had been found, in July, 1917, by the Public Service

Commission, to be unreasonable. The rate-base thus adopted was therefore unlawful, and one not determined on a reasonable charge fixed for the intrastate service, as it was required to be, but on an illegal, disapproved tariff filed with the Public Service Commission, and which had been subsequently directed to be lowered. As adopted, it made allowable a charge of $1.10 per gross ton instead of one dollar.

Under the Federal Act of March 21, 1918, the director general exercised full power in the management of the roads engaged in both interstate and intrastate commerce, with the right, subject to approval by the Interstate Commerce Commission, to fix the rates which should be charged (Northern Pacific Ry. Co. v. North Dakota, 250 U. S. 135), and, as this directly or indirectly affected the former class of service, he was given the same privilege for the period from March 1, 1920, when governmental control ceased, to the following September, covering six months, known as the guarantee period.

The provisions of the Transportation Act became effective after February 29, 1920. An effort was made to protect the owners of railroads for the period of six months, and it was provided therein: "All rates, fares and charges, and all classifications, regulations and practices in any way changing, affecting, or determining any part, or the aggregate of rates, fares, or charges, or the value of the service rendered, which, on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by state or federal authority, respectively, or pursuant to authority of law; but, prior to September 1, 1920, no such rate, fare or charge shall be reduced and no such classification, regulation or practice shall be changed in such manner as to reduce any such rate, fare or charge, unless such reduction or change is approved by the commission."

At the time this legislation became in force there was outstanding the rate fixed by the federal authorities, and approved by the Interstate Commerce Commission, of $1.10 for the haulage of coal between the points in question, and, on August 26, 1920, by general order, a flat increase of forty per cent of the sums then collectible was allowed: Ex Parte 74, 58 I. C. C. 220, 260. This resulted in giving the appellants the right to charge $1.54, if the sum allowable by governmental permission prior to March 1, 1920, was to control, but otherwise, if the reasonable sum determined by the Public Service Commission of the State was used as a structural base, in which case the rate should have been one dollar, beginning March 1st, and rising to $1.40 on August 26th.

It may be noted that, on complaint to the Interstate Commerce Commission, a rate of $1.10 was held to be fair in a proceeding in which the present litigants were also parties, and that this decision was rendered subsequent to March 1st, but it will also be observed that the question of reasonableness was not the only issue presented, the commission saying that the manner in which the rate was arrived at is only one element in determining what was a proper sum to be charged. This ruling was made on June 18, 1920, but it is insisted that after March 1st, of that year, in so far as intrastate rates were concerned, the Public Service Commission of Pennsylvonia had the right to determine the question. On the other hand, the appellants urge that no reduction could be permitted during the guarantee period without consent of the Interstate Commerce Commission, and therefore the appellees are precluded in their present claim, based on the order of reparation later made by the local regulatory body.

Prior to March 1, 1920, a second complaint, which may hereafter be referred to as No. 3206, alleging improper charges in so far as intrastate business was concerned, now the subject of controversy, was presented to the state commission. A final conclusion was not

reached until August 17, 1921, and that body held the reasonable pay for shipments from March 1st to August 26th, should be one dollar, and for the period thereafter, $1.40. This, in effect, sustained the rate base made by the same commission in 1917, as it passed through the successive increases permitted during federal control, making due allowance for those advances. From this decision no appeal was taken, though permissible and required under the Public Service Act, as it touched or affected all matters heard and considered. Section 31, of article VI, provides: "Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be and remain conclusive upon all parties affected thereby, unless set aside, annulled or modified in an appeal or proceeding taken as provided in this act" (Act of July 26, 1913, P. L. 1374), and section 17, as amended, directs that this shall be done within a period of thirty days (Act of June 3, 1915, P. L. 779). A failure to so proceed operates as a waiver of the right to review: N. Y. & Pa. Co. v. N. Y. C. R. R. Co., supra. From the order fixing the reasonable rate no such appeal was taken, and the appellants are now debarred from complaining of the ruling.

It is important to remember that, in the proceeding before the state board on the second complaint (3206), which passed upon the disputed charges fixed during federal control, the appellants here asserted that the Public Service Commission had no power to reduce the rates between March 1, 1920, and September 1, 1920, and any attempt to do so would be void because not approved or authorized by the Interstate Commerce Commission. At the hearing then, the railroads denied to the former any power or authority whatsoever to hear and determine the case by way of a reduction, and claimed such order was "nugatory and of no avail." The issue was there squarely joined as to whether the commission had power within itself to hear and determine the reason-

ableness of a rate during the guarantee period, without the joinder of the Interstate Commerce Commission. We take from the record before us that appellants denied any authority to alter the charges in any manner until the federal tribunal had acted or authorized it to be done.

The Public Service Commission, at that time, decided that, immediately upon the return of the railroads to prewar status, its authority to control followed, and they became "subject to the Public Service Company Law," in so far as relates to intrastate rates, which class of cases was exclusively under the control of the state commission.

With the record in this condition, it is apparent the parties voluntarily submitted to a tribunal competent to hear their complaint and contention. It was imperative, if an adverse decision was rendered, that those feeling aggrieved should follow the mode pointed out by the act of assembly. If no appeal was taken, then section 31, of article VI, made all rulings between the parties conclusive. "Defendant attempted to re-raise the question decided in the first proceeding, but this it could not then or thereafter do, not because the facts and law there laid down were res adjudicata in the usual acceptation of that term, but because, by article VI, section 31, of the act, defendant's failure to appeal made all those rulings 'conclusive upon all parties affected thereby' ": N. Y. & Pa. Co. v. N. Y. C. R. R. Co., supra, p. 70. And, as further stated in L. & N. E. R. R. Co. v. Pub. Ser. Com., 277 Pa. 493, 499, this included the findings on which the order was based. It is elementary that where a party makes a defense before a tribunal competent to hear the cause, upon a question either of fact or law, and the conclusion is adverse, he must pursue the statutory remedy, otherwise he is bound by the decision rendered.

Had the question of the exclusive right of the Public Service Commission to deal with the rates involved not

been raised, a different proposition might be before us. But that the contrary was considered and decided in complaint No. 3206, and squarely passed upon by the commission, is evidenced not only from the record in that proceeding, but from the opinion in the reparation proceedings now before the court. It was only after our decision in L. & N. E. R. R. Co. v. Pub. Ser. Com., 277 Pa. 493, that a change of attitude by the defendants took place.

We are of opinion that the appellants, through their failure to appeal from the order of the Public Service Commission, on the second complaint, No. 3206, lost their right to now complain that the reduction was effective without having been submitted to the Interstate Commerce Commission for approval.

That this is so is further apparent. Considerable stress is laid on the so-called final order, and article VI, section 31, of the Public Service Act is quoted as the basis of appellants' contention that the state commission's order in the second complaint did not involve a consideration of the rates during the guarantee period. That this is obviously incorrect appears not only from the findings made, but also from the decision of our court in L. & N. E. R. R. Co. v. Pub. Ser. Com., 277 Pa. 493. "When the commission shall determine, after hearing ......upon complaint, that the rate......[is] unjust ......[it shall] determine and prescribe by specific order the......reasonable rate......to be thereafter established, demanded, exacted, charged or collected." This is in the precise language of the act of assembly. The order could relate only to rates in the future. But as stated in the Lehigh Case (page 499) : "The appeal to the Superior Court opened all challenged findings relating to the contested rate; the final decree was not the only matter to consider......Questions on the findings are not to be taken up piecemeal,—that is, for the future under this appeal, and the reasonableness of the past rate on an appeal from a reparation award......The

Superior Court did not err in considering all questions presented to the commission or arising under the complaint." Appellants' counsel admit that, had the commission, in complaint No. 3206, being the second one, issued an order with respect to the rates during the guarantee period, the situation now under consideration would be different, for such order would have raised at once the question of its power to make and enforce it. The record shows that, after having debated the relative positions of the parties, as hereinabove indicated, and discussed the evidence, the commission made this finding and definitive order: "Upon all of the facts of record, we conclude that the just and reasonable through rate from the Munson District and the Hawk Run District on the New York Central Railroad to Lock Haven, Pa., on the Pennsylvania Railroad, for the period March 1, 1920, to August 25, 1920, both inclusive [this being the guarantee period], should be $1 per 2,240 pounds, and effective August 26, 1920, the date of the 40 per cent increase following Ex Parte 74, 58 I. C. C. 220-260, $1.40 per 2,240 pounds, Respondents will be directed, by appropriate order, to establish upon one day's notice within thirty days of the service of the order the through rate of $1.40," being the rate here complained of. This order was made without any qualification, and, as indicated, without any suggestion of being subject to the Interstate Commerce Commission, and is in no sense interlocutory. It was final, and the subject of appeal. At that time this appellant was notified by the commission that, upon the presentation of a petition, accompanied by supporting data, reparation would be awarded for freight charges paid in excess of the rates herein determined, further emphasizing the determination of the commission that the matter was exclusively within its own control.

In 1922, the Public Service Commission was asked to grant reparation to the appellees for the sums paid in excess of the dollar rate for the period from March 1, 1920, to August 26th of the same year, and $1.40 there-

after, and to award a sum which would equal the overcharges, and this resulted in an allowance to the petitioners. The sum claimed for the excess collection, during the so-called guarantee period mentioned, forms the foundation of the present suit. A statement of claim was filed, and an affidavit of defense interposed, which the learned court below held to be insufficient, with the result that judgment was entered for the plaintiff.

As noted, the defense rests on the proposition that the rate fixed as reasonable by the Public Service Commission of the State is ineffective, in that no approval of the Interstate Commerce Commission was secured to reduce rates during the guarantee period, and it is insisted such action was required under the terms of the Transportation Act. This overlooks the provision of the congressional legislation that no changes shall be made unless approved "by *state* or federal authority." It is clear that the local rates were held in abeyance during the period of federal control, and, as far as interstate commerce is concerned, remained subject to the action of the Interstate Commerce Commission until September 1, 1920, but after March 1st of that year, in so far as intrastate rates were concerned, the control of the state commission again became effective: L. & N. E. R. R. Co. v. Pub. Ser. Com., 277 Pa. 493; see, L. & N. E. R. R. Co. v. Pub. Ser. Com., 79 Pa. Superior Ct. 540. As said by Judge KEPHART in the decision first cited: "After the Act of 1920 the control of the Interstate Commerce Commission was (1) to establish a level of rates which would afford the compensation necessary to permit the maintenance of an adequate national railway system during the prescribed period; (2) remove discrimination against interstate commerce as a whole arising from the enforcement by state authorities of a different level of rates for a similar purpose; (3) to prevent discrimination against interstate traffic aimed at persons or localities by any intrastate rate or schedule."

Prior to the Transportation Act and the taking over of the railroads by the government, it is clear the Interstate Commerce Commission had no control over matters affecting intrastate transportation, including the rates charged by such carriers, except as their enforcement caused discrimination against interstate commerce: R. R. Com. of Wisconsin v. C., B. & Q. R. R. Co., 257 U. S. 563; New York v. U. S., 257 U. S. 591; Texas v. Eastern Texas R. R., 258 U. S. 204. Here, admittedly, the shipments are of the former class alone, and do not affect the movement of freight from one state to another. During the war, the federal government controlled both classes, but, beginning with March 1, 1920, the federal rights were limited, and, as already noted, the determination of reasonableness of charges was either within the jurisdiction of the "state or federal authority," depending on the character of the traffic, and other effective limitations of the Transportation Act.

In the present instance, the state commission made no attempt to reduce any rates, but to correct a charge based on an admittedly illegal premise, and make it conform to one determined as reasonable prior to federal control. The decision enforces the order of reparation determined on that basis, making due allowance for increases which had from time to time been authorized by the director general. As we have stated, no appeal by any party who felt aggrieved was taken from the final order, as required by our acts of assembly. We are convinced that judgment for the plaintiff was properly entered by the court below, and, the assignments of error are overruled, without separate discussion.

The judgment is affirmed.