## Centre County Lime Company & Chemical Lime Company, Appellants, v. Public Service Commission.

Argued April 12, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*James C. Furst,* for appellants.—The commission was not warranted under the law in disposing of an application for reparation in an original proceeding asking for a change in rates: New York & Pennsylvania Co. v. New York Central R. R. Co., 267 Pa. 64; Arlington Heights Fruit Exchange v. S. P. Co., 45 I. C. C. 248; Standard Scale Co. v. Farrell, 249 U. S. 571.

An appeal lies to the Superior Court from an order refusing reparation made by the commission: Newport & Shermans Valley R. R. Co. v. P. S. C., 75 Pa. Superior Ct. 28; West Virginia P. & P. Co. v. P. S. C., 61 Pa. Superior Ct. 555; Lehigh & New England R. R. Co. v. Public Service Commission, 79 Pa. Superior Ct. 540.

*Henry Wolf Bikle,* and with him *William F. Zearfaus* and *Ralph J. Baker* of *Hause, Evans and Baker,* for interveners.—The Public Service Commission was warranted in dismissing a petition for an order for reparation when the complainant failed to aver any finding by the commission that the rates charged on the shipments were unreasonable or otherwise unlawful during the period when the shipments moved: Northern Grain & Warehouse Co. v. O. S. L. R. R. Co., 100 I. C. C. 319; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426.

*Daniel H. Kunkel,* Legal Assistant, and with him *E. Everett Mather, Jr.,* Assistant Counsel, and *John Fox*

*Weiss,* Counsel, for The Public Service Commission.—Under the provisions of the Public Service Company Law no appeal lies to the Superior Court from an order of the commission in a reparation proceeding dismissing the complaint petition: West Va. Pulp & Paper Co. v. Public Service Commission, 61 Pa. Superior Ct. 555; Howe v. Pennsylvania Railroad Co., 295 Pa. 337.

OPINION BY CUNNINGHAM, J., July 2, 1929:

These appeals were taken by two shippers of quarry products, over various railroad lines, from an order of the Public Service Commission, dated October 30, 1928, dismissing, without a hearing (except by way of argument upon the pleadings), their respective claims for reparation for the amounts paid by them, in the past and upon divers shipments, in excess of the rates which the commission, as the result of an investigation terminated early that year, prescribed as the rates to be charged for the future. The proceedings out of which the present appeals arose originated in April, 1925, through joint complaints to the commission by the appellant companies against the Bellefonte Central and the Pennsylvania Railroads, and numerous other rail carriers, against the reasonableness of certain rates applicable on coal, crushed stone and other commodities, to and from certain designated intrastate points, which complaints were docketed at Complaint Docket Nos. 6482 and 6483, respectively. The rulings and orders of the commission, both in favor of and against the appellants, were identical as to each appellant and we shall therefore dispose of their separate appeals in a single opinion.

Appellants are engaged in the business of manufacturing lime, ground limestone, fluxing and crushed stone, in the vicinity of Bellefonte, and in shipping these commodities from their plants on the line of the

594

Bellefonte Central to various points within the State. They averred in their original complaints that the rates charged by the designated railroad companies "are and have been and will be for the future excessive, unreasonable, unjust and unlawful to the extent that they exceeded, exceed or may exceed the rates and charges in effect April 4, 1923, from Bellefonte, Pa., to said destination points," and that they have been damaged "in a sum of money amounting at least to the difference between the rates and charges collected or collectible and those that would have been collected on basis of rates and charges in effect April 4, 1923, on the same commodities from Bellefonte, Pa., to the same destinations." The prayer of the complaint was, in effect, that the commission, after hearing and investigation, order the carriers to cease and desist from the collection of the rates alleged to be unreasonable, establish and apply for their commodities "in the future" such rates as the commission shall deem reasonable and just and "pay to the complainants by way of reparation for the unlawful charges ...... a sum of money amounting at least to the difference" above indicated. Answers having been filed by the carriers, the commission proceeded with its investigation and under date of January 3, 1928, filed its report in which it found that the rates complained against "are, and for the future will be, unjust and unreasonable," to the extent stated therein, and made an order sustaining appellants' complaints and directing the railroad companies to establish on or before February 25, 1928, and thereafter maintain, the rates prescribed by the commission. In its report the commission referred to appellants' demand for reparation and said: "Under the law as defined in New York and Pennsylvania Company v. N. Y. C. R. R., 267 Pa. 64, a claim for reparation is a separate proceeding.

In view of our conclusions directing the establishment of bases for rates for the future only and the scope of that determination we deem it appropriate to say that the situation does not in our judgment warrant an award of reparation."

One of the carriers, Bellefonte Central Railroad Company, supported appellants in a portion of their complaints. No appeal was taken from the order of January 3, 1928. Under date of August 13, 1928, each appellant filed its separate petition and claim for reparation, the claim of Centre County Lime Company being docketed by the commission at No. 7790 and that of Chemical Lime Company at No. 7795 of its Complaint Docket, 1928. Each appellant claimed reparation upon specified shipments made during the period beginning two years prior to the filing of the complaint against the rates and ending with the effective date for the reduction. The claims, with interest, aggregated over $5,000 in the case of Centre County Lime Company, and more than $7,000 in that of Chemical Lime Company. In answering the claims for reparation the carriers, other than the Bellefonte Central, cited the above quoted paragraph relative to reparation from the previous report of the commission; averred that a complaint for reparation cannot properly be entertained until the commission has found that the "past rates" were unreasonable; and alleged that the report on the rate complaints establishing "bases for rates for the future only" was in effect a finding that they had not been unreasonable in the past. The commission did not "fix a time and place for a hearing" on the reparation complaints and answers thereto but disposed of the matter upon a petition of the carriers, dated September 10, 1928, for the dismissal of the complaints and the reply of the appellants. These pleadings really consisted of the briefs of the

respective parties upon a motion to dismiss the petitions for reparation.

Under date of October 30, 1928, the commission filed its report in which it referred to its findings on the rate complaints; quoted therefrom the paragraph notifying the parties that reparation would not be awarded; and concluded: ''By its prior report, the commission decided that the rates in controversy should be reduced. However, as was indicated in that report, the facts in this case do not warrant and the public interest would not be served by requiring the railroad companies to repay to shippers a portion of the charges collected under legal tariffs, because the commission had ordered the charges reduced for the future. Therefore the petitions for awards of reparation will be refused.''

From the formal order of that date, dismissing the reparation petitions, these appeals were taken to this court. The errors assigned by the petitions in appeal may be thus summarized: That the commission erred (a) in refusing to permit appellants to establish, under their petitions, the damages suffered by them; (b) in certifying in its order of October 30, 1928, that the matters before it under the petitions for reparation had been duly heard and submitted by the parties and full investigation thereof made when, in fact, no hearing had been had or opportunity afforded to prove the damage alleged; and (c) in basing the order of dismissal upon its statement in its previous report to the effect that the situation did not, in the judgment of the commission, warrant an award of reparation. It is further averred in the petition in appeal that the order complained of is unjust, unreasonable and not in conformity with law, inter alia, in that it deprives the appellants of their property without due process of law and denies to them the equal protection of the law.

The carriers, having intervened, filed answers to the petitions in appeal, were heard by their counsel at the oral argument and have filed a printed brief.

On December 20, 1928, the commission filed in this court motions to quash the appeals upon the ground that under the provisions of the Public Service Company Law "the decision whether or not reparation ought to be awarded is left to the discretion of the commission" and from its exercise no appeal lies— either from an order awarding reparation or from one refusing it.

Under these records, as we have reviewed them, two questions are involved: (1) the validity of the order of October 30, 1928; and (2) the right of appellants to appeal therefrom to this court.

1. The foregoing recital of the proceedings demonstrates that the commission has blended with the initial proceedings challenging the reasonableness of certain railroad rates the question of reparation to shippers, and, relying upon certain conclusions arrived at and expressed in the rate proceedings, but immaterial thereto, has dismissed appellants' petitions for reparation, properly filed subsequent to the adjudication of the rates, without affording them an opportunity to be heard upon the issues involved under their claims for reparation. A majority of the members of this court are of opinion that the commission erred in so doing and that the order of dismissal is not in conformity with the Public Service Company Law of July 26, 1913, P. L. 1374, its amendments and supplements. The jurisdiction of the commission over the rates of public service companies doing business within this Commonwealth is conferred by section 3 of article V of that law. The portions thereof applicable here read: "Whenever the commission shall determine, after hearing ...... upon complaint, that the rates,

....... charged, or collected by any public service company or companies, for any service rendered.......
are unjust or unreasonable, ........ or are unjustly discriminatory or unduly or unreasonably preferential; ...... then the commission shall determine, and prescribe by a specific order, the ....... reasonable rates ...... to be thereafter established, ...... charged, or collected.''

The matter of possible reparation to ratepayers is dealt with in an entirely separate section of this article —section 5—from which we quote these provisions:

''If, after hearing, upon complaint ...... the commission shall determine that any rates which have been collected ....... were ...... unjust and unreasonable or unjustly discriminatory, or unduly or unreasonably preferential, ....... the commission shall, upon petition, have the power and authority to make an order for reparation, awarding and directing the payment to any such complainant, petitioner, within a reasonable time specified in the order, of the amount of damages sustained in consequence of said unjust, unreasonable, or unlawful collections, ....... Provided, That such damages have been actually sustained by such complainant petitioner.

''The commission shall state in said order the exact amount to be paid, as well as its findings upon pertinent questions of fact.

''If the public service company does not comply with the aforesaid order for the payment of money within the time fixed therein, the person named therein, to whom such payment is directed to be made, may sue therefor in any court of common pleas of this Commonwealth; ......

''No action shall be brought in any court on account of the wrongs or injuries referred to in this section, unless and until the commission shall have determined

that the rate ........ was unjust, unreasonable, or un-justly discriminatory or unduly or unreasonably pre-ferential, ...... and, then, only to recover such dam-ages as may have been awarded and directed to be paid by the commission in said order."

The proceedings under these several sections are necessarily separate and distinct; in a complaint against rates the commission is required to determine whether the rates in force at the time of its investi-gation "are unjust or unreasonable" and will be for the future. That was the only question properly be-fore the commission under the complaints against the rates. The object of a rate proceeding is to prevent a public wrong for the future; reparation redresses a private wrong of the past. The findings on the issues actually involved in the rate case furnished no basis either for awarding or refusing reparation; there has, as yet, been no specific finding that the rates were un-reasonable in the past. By the express provisions of the statute nothing can be done toward the redressing of the wrongs suffered through the exaction of un-reasonable rates until the commission, after hearing, "shall determine that any rates which have been col-lected ........ were ........ unreasonable," et cetera. A question of reparation cannot properly be determined by the commission until it has been presented to it in the manner prescribed by the act, nor should it be prejudiced, or the door closed against it, by a declara-tion in advance of a hearing. The distinctions to which we have referred were clearly pointed out by the Su-preme Court in the case of New York and Pennsyl-vania Co. v. New York Central R. R., 267 Pa. 64, cited by the commission in its report of January 3, 1928. In that case the carrier filed a new schedule increasing its rates upon coal and the commission sustained com-plaints against such increase and directed the restora-

tion of the former rates. There, as here, the complainants against the rates included in their complaints prayers for reparation. The commission made no reference in its report to the matter of reparation. No appeal was taken from the order in the rate proceedings and it was contended, as, in the present case, that the complainants were, therefore, precluded from subsequently claiming reparation. Upon a petition for reparation thereafter filed by one of the complainants, the commission made an award and the right of the shipper to sue for and recover in the common pleas of Clinton County the amount thus awarded was sustained. In the consideration (upon appeal to it from the judgment in that court) of certain questions which are also here involved, our Supreme Court, through Mr. Justice Simpson, said: "No order of reparation was then [at the conclusion of the rate proceeding] made because the machinery of the law, so far as it relates to this branch of the investigation, looks only to an inquiry into the reasonableness of the rates objected to, and hence ...... the statute requires reparation to be applied for, and granted or refused in a later proceeding. ....... If it be asked why the legislature required the two proceedings to be kept separate, this record furnishes the answer. Many parties were interested in having the rate determined to be unreasonable, some of whom, being public bodies and not shippers, intervening on behalf of the public generally, never could get reparation. Each claimant was alone interested in the reparation to be made to him. To hear both matters together would tend to confusion and not to orderly procedure," etc. It was also held that the fact that the complainant there asked too soon for an order of reparation did not prevent it from subsequently presenting and prosecuting its claim for reparation. In Lehigh and New England Railroad Co.

v. Pub. Ser. Com., 79 Pa. Superior Ct. 540, affirmed 277 Pa. 493, Linn, J., remarked that a prayer for reparation in a complaint against rates "perhaps amounts to no more than notice that claim for reparation will be made if the rate be held unreasonable." In view of the provisions of the Public Service Company Law, as construed and interpreted in the case cited, we are of opinion that both the prayer for reparation in appellants' original complaints against the rates and the admonitory paragraph in the report of the commission—"In view of our conclusions directing the establishment of bases for rates for the future only and the scope of that determination we deem it appropriate to say that the situation does not in our judgment warrant an award of reparation"—were foreign to the issues then involved and did not in any way affect the right of appellants subsequently to petition for reparation, or relieve the commission from the duty of affording them a hearing thereon. We do not even intimate that we think appellants are entitled to reparation; all we decide is that it is the duty of the commission to afford them a hearing upon the question of the reasonableness of the rates in the past and whether they have sustained damages.

2. Although we have reached the conclusion that the order of October 30, 1928, is invalid, the technical question raised by the commission's motions to quash —whether an appeal lies to this court from an order refusing reparation—remains for consideration. It is clear that no direct appeal lies from an order awarding reparation. The provision of section 5 of article V, which we have already quoted, is that any party "to whom such payment is directed to be made, may sue therefor in any court of common pleas of this Commonwealth," if the utility does not pay the award. Article VI of the Public Service Company Law regu-

lates the practice and procedure before the commission and upon appeal. Section 17 thereof, as amended by the Act of June 3, 1915, P. L. 779, provides "that there shall be no appeal from any order for reparation made by the commission, but the suit may be brought as hereinbefore provided." When the implications of the position taken by the commission in its motions and brief are considered, the proposition is rather arresting. It is, in short, that if the commission, an administrative body, sees fit, in the exercise of its discretion, to refuse a shipper, or other ratepayer, any reparation, he cannot secure a judicial review of such action. If a shipper has been charged an unreasonable rate he has a property right in the excess payment—a right recognized by, and enforceable under, the common law (Texas and Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426)—and we are not prepared to say that the commission has been given the power to take away that right. The manner in which the right may be enforced has been modified by the Public Service Company Law; "no action shall be brought in any court" to enforce it, "unless and until" the commission shall have determined that the rates paid were unreasonable, "and then only to recover such damages as may have been awarded ...... by the commission." We think this is as far as the statute was intended to go, and that a claimant for reparation is still entitled to his day in some court.

The commission, in support of its position, cites Newport and Shermans Valley Railroad Company v. The Commission, 75 Pa. Superior Ct. 28, 31, and West Virginia P. & P. Company v. The Commission, 61 Pa. Superior Ct. 555, 568-9. The last mentioned was the case in which this court decided that the Act of June 3, 1915, P. L. 779, designating the Superior Court instead of the court of common pleas of Dauphin

County as the court by which appeals from the findings and orders of the commission shall be determined, is constitutional. The language in this opinion particularly relied upon by the commission reads: "In the case of reparation, damages and compensation, appeals are not taken to the Superior Court. The act provides that as to reparation an action may be brought in any court of common pleas for the amount awarded by the commission and that in the case of damages and compensation appeals shall be taken to the proper court of common pleas where the questions are to be tried before a jury as the constitution and statutes provide." What was there said clearly refers only to instances in which an award of reparation, or of damages and compensation, has been made by the commission; it has no application whatever to the situation which arises when the commission refuses to make an award.

Likewise, in the Newport and S. V. R. R. Co. case, supra, the proceeding before the commission was for reparation to certain shippers for the damages suffered by them through the exaction of rates which the commission had determined to be unreasonable and an award of reparation was made. On appeal by the railroad company, this court pointed out that the statute provides that there shall be no appeal from any "order for reparation" made by the commission and granted the motion of a shipper, permitted to intervene, to quash the appeal. Here, also, an award had been made and the case is not authority for the commission's present contention.

We have reached the conclusion that an order refusing reparation is analogous to one refusing to make, under section 12 of article V, as amended by the Act of July 17, 1917, P. L. 1025, an award of damages to the owners of adjacent property who claim that it

has been taken, injured or destroyed in the construction, relocation, alteration or abolition of a grade crossing, in which event, as we shall show, an appeal lies to this court, and that appellants had the right to take the present appeals. When the commission awards compensation for damages to property, the owners are, under the provisions of section 12 of article V, "invested with warrant of authority, upon appeal from the determination of the commission, to sue the Commonwealth." By section 17 of article VI it is provided, inter alia: "That in case of an appeal from the award of damages or compensation by the commission, under any of the provisions of this act, the appeal shall, in case any party is entitled to demand a jury trial under section eight of article sixteen of the constitution of this Commonwealth, be to the courts of the proper county thereof, but in all other cases shall be to the said Superior Court."

The phrase, "in all other cases," was manifestly intended to cover every order made by the commission except: (a) an "order for reparation," from which no appeal lies direct to any court, but on which a suit is to be brought in the common pleas with the judgment rendered therein appealable to the appropriate appellate court (New York and Pennsylvania Co. v. New York Central R. R. Co., supra); and (b) an "award of damages or compensation" in cases in which "any party is entitled to demand a jury trial," under which circumstances the appeal shall "be to the courts of the proper county."

Our Supreme Court expressly decided in Howe et al. v. Pennsylvania Railroad Co., 295 Pa. 337, that an appeal lies to this court from an order of the commission dismissing, after a hearing, the claims of property owners alleging that they had been injured by changes incident to the abolition of a grade crossing under an

order of the commission, approved, upon appeal, by this court (Borough of Marcus Hook v. Pub. Serv. Com., 87 Pa. Superior Ct. 210). Upon refusal of the commission to make any award to them the property owners appealed separately to the common pleas of Delaware County. The jurisdiction of that court was questioned but it held that it had jurisdiction. Upon appeal to the Supreme Court under the Act of March 5, 1925, P. L. 23, for the purpose of obtaining preliminarily a final decision as to the jurisdiction of the common pleas, it was held that as "there was no award of damages the property owners appealed to the wrong tribunal and their appeal should have been quashed by it." The cases are there reviewed and it is shown that in claims for damages to property, unless the dual situation—an award by the commission and right to demand a jury trial—exists, the case falls within the classification, "other cases," regarding which the statute peremptorily declares the appeal "shall be to the Superior Court."

We see no good reason why the construction there adopted should not be applied to the refusal of an award of reparation. The interesting question of the rights of a petitioner for reparation to whom an award which he considers inadequate has been made, argued in some of the briefs, is not involved under these appeals; its consideration may safely be postponed until it arises. The conclusions we have reached require us to deny the commission's motions to quash and to dispose of the appeals upon their merits.

The order of October 30, 1928, dismissing appellants' petitions for reparation, is reversed and the records are remitted to the Public Service Commission with directions to reinstate the petitions and take such proceedings thereon as shall not be inconsistent with this opinion.