Alan Wood Iron & Steel Company et al. and
Central Iron & Steel Company, Appellants,
*v.* Public Service Commission of
Pennsylvania et al.

Argued April 12, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Ralph J. Baker,* for appellants, cited: Ben Avon Borough v. Ohio Valley Water Company, 260 Pa. 310; New York & Pennsylvania Co. v. New York Central Railroad Co., 267 Pa. 64; Lehigh & New England R. R. Co. v. Public Service Commission, 79 Pa. Superior Ct. 540.

*Henry Wolf Bikle,* for interveners, cited: Bradenton Chamber of Commerce v. Railroads, 136 I. C. C. 69; National Association of Employing Lithographers v. Railroads, 136 I. C. C. 201; Anderson Commission Company v. Railroads, 136 I. C. C. 261; Turner-Altus Company v. Railroads, 139 I. C. C. 4.

*John Fox Weiss,* Counsel, and with him *E. Everett Mather, Jr.,* Assistant Counsel, and *Daniel H. Kunkel,* Legal Assistant, for The Public Service Commission, cited: L. & N. E. R. R. Co. v. P. S. C., 79 Pa. Superior Ct. 540.

Opinion by Cunningham, J., July 2, 1929:

As these separate appeals are from a single order of the Public Service Commission and as the same question is involved in each, they will be disposed of

in one opinion. In January, 1927, the appellants at No. 26, March T., 1929, Alan Wood Iron and Steel Company, Lukens Steel Company and the Phoenix Iron Company, engaged in the manufacture of metal products and operating various plants located on lines of the Pennsylvania Railroad Company and the Reading Company, intervening appellees herein, filed a joint complaint with the commission against the rates charged by these, and certain originating and intermediate, carriers for the transportation of fire brick in carloads to their plants, and other points in eastern Pennsylvania, from the producing district in the central part of the State. In the complaint they averred that "they have been subjected to the payment of rates and charges ...... which were, when exacted and collected, and still are and for the future will be," discriminatory, unjust and unreasonable and in violation of the Public Service Company Law. The prayer of the complaint was that the commission "shall ...... determine ...... that said rates ...... collected by [the carriers] ...... have heretofore been, are, and for the future will be, unjust, unreasonable ...... and unlawfully discriminatory; ...... and shall determine and prescribe the ...... reasonable rates and charges to be thereafter ...... collected ...... for said intrastate transportation; ...... and shall make an order for reparation, awarding and directing the payment to complainants and to each of them ...... of the amount of damages to which complainants ...... shall be entitled by law in consequence of the unjust, unreasonable and unlawful collections ...... heretofore, now or hereafter exacted and collected." This complaint was docketed at Complaint Docket No. 7136 of the commission.

In May, 1927, the appellant at No. 27, March T., 1929, Central Iron and Steel Company, engaged in the

4

manufacture of iron and steel products with its plant located at Harrisburg on the lines of the same railroads, filed a similar complaint against the rates for the transportation of the same commodity; its complaint contained the same charges and prayers and was docketed at Complaint Docket No. 7295. Answers were filed by the carriers and certain other ratepayers were permitted by the commission to intervene in the proceedings. The complaints were heard and considered together by the commission and the investigation terminated on August 31, 1928, by the filing of the report of the commission stating its reasons for finding that the rates complained against were then, and for the future would be, unreasonably high and concluding with this paragraph: "Under the law as defined in New York and Pennsylvania Company v. N. Y. C. R. R., 267 Pa. 64, a claim for reparation is a separate proceeding. In view of our conclusions directing the establishment of bases for rates for the future only and the scope of that determination, we deem it appropriate to say that the situation does not in our judgment warrant an award of reparation."

The same day a formal order was entered sustaining the complaints and directing the carriers to establish within thirty days the reduced rates prescribed by the commission. The introductory paragraph of this order reads: "These matters being before the Public Service Commission of the Commonwealth of Pennsylvania, upon complaints and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the Commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made part hereof; Now . . . . . . it is ordered" etc.

Conceiving that, although their complaints were sustained by the commission, they may have been affected and aggrieved by the inclusion in its report of the above quoted paragraph to the effect that, in the judgment of the commission, the situation did not warrant "an award of reparation," the complainants, largely as a matter of precaution, took these appeals. They contend that this statement, by virtue of the above quoted introductory paragraph of the final order, is carried into and made a part of it, and that to the extent the final order includes this finding it is unreasonable and not in conformity with law, because, as they assert, it deprives them of their property without due process of law, denies to them the equal protection of the law, and is arbitrary and beyond the jurisdiction of the commission. The prayer of the petitions in appeal is that we "enter an order directing the commission to expunge and strike from its report the paragraph assigned as error and that we vacate and annul this portion of the report and the inclusion thereof in the order of the commission." Although formal answers to the petitions in appeal were filed by the commission and by the carriers intervening in the appellate proceedings, the substantial question involved on these appeals was raised by motions of the commission to quash them; the oral arguments and printed briefs were confined to the question raised by these motions. Each motion is, in effect, a statement of the commission's general purpose in including in some of its reports on rate investigations the paragraph objected to, and contains an averment that after all it is in the nature of *obiter dicta* and that "the appellant is not affected by the statement quoted in its assignment of error."

The inquiry to which appellants seek a reply by these appeals is: What, if any, effect has the inclusion

in the report of the commission of the paragraph assigned for error upon their rights hereafter to complain to the commission, under section 5 of article V of the Public Service Company Law of July 26, 1913, P. L. 1374, 1405, that the rates paid by them in the past upon the commodity in question were unreasonable and discriminatory, and to be accorded a hearing and obtain a decision upon the merits of such petitions for reparation as they may see fit to file under that section? In the opinion of a majority of the members of this court, neither the inclusion by appellants of a prayer for reparation in their complaints against the rates, nor the inclusion by the commission in its report of the statement that the situation does not warrant an award of reparation, affects in any way the right of appellants or any of them to proceed, if they so desire, for reparation under section 5 of article V of the act. In the cases of Centre County Lime Co. v. Pub. Ser. Com. and Chemical Lime Co. v. Pub. Ser. Com., Nos. 14 and 15, October T., 1929, of this court, we have this day filed an opinion in which we have set forth at length, and therefore need not repeat here, our reasons for holding that complaints against rates and petitions for reparation are, under our Public Service Company Law, such separate and distinct proceedings that they may not properly be blended by the Commission. What we have there said relative to the distinctions between proceedings under section 3, and those authorized by section 5, of article V is equally applicable to the question involved on these appeals. Appellants' complaints against the rates having been sustained, and this court having reached the conclusion that the portion of the report assigned for error is extraneous and irrelevant to the only issue involved under those complaints—the reasonableness of the rates at the time of the investigation and for the

future—and that it can therefore have no legal effect upon any subsequent proceedings for reparation, we see no necessity for granting the formal prayer of the petitions in appeal.

Each appeal is dismissed.