## Chambersburg Gas Company, Appellant, *v.* Public Service Commission et al.

Argued October 3, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frederic L. Ballard,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *John V. Lovitt,* for appellant.

*Samuel Graff Miller,* with him *Harry H. Frank* and *John C. Kelley,* for Public Service Commission.

*Douglass D. Storey,* of *Hause, Evans, Storey & Lick,* with him *Edmund C. Wingerd,* for intervening appellees.

OPINION BY PARKER, J., December 18, 1935:

Chambersburg Gas Company, on May 1, 1929, filed with the Public Service Commission a new schedule of rates to become effective June 1, 1929. Before the effective date, complaints were filed alleging that the proposed rates were unreasonable, discriminatory, and unduly preferential to certain consumers. The effect of the proposed tariff was to increase the cost of gas to those using less than nineteen hundred cubic feet per month and reduce the price to those using more than that amount, and likewise to decrease the average price of all gas consumed. After hearing, the commission, on November 15, 1932, handed down its report fixing the fair value of the plant and various other elements necessary to determine a fair return and then prescribed a new tariff to be filed by the utility and calculated to yield the proper return. From that order an appeal was taken to this court and the order was, in part, reversed (116 Pa. Superior Ct. 196, 176 A. 794). The effect of our decision was to increase the fair value of the property by $15,000, and the annual allowance for uncollectible accounts by $300. In addition, the commission was directed to make an allowance for federal income taxes and a corresponding increase in the rates it had prescribed. At the inception of the proceedings, the utility was not paying a federal income tax but, by a change in the law effective January 1, 1934, it became subject to a substantial tax. A stipulation having been filed by the parties furnishing the data necessary to estimate the amount of tax that would

be paid by the company, the commission on June 11, 1935, filed a supplemental report making the changes required by the order of this court. The commission concluded its opinion with the order which is printed in the margin.* From that order the respondent has again appealed to this court. It does not attack the schedule of rates which the commission has fixed for the future but complains of the order insofar as it attempts to fix rates for the past and thus, as it alleges, prejudge the question of reparations, and further objects to the provision of the order requiring the utility to file a schedule covering a past period, suggesting that compliance with such order might be equivalent to an admission by the company that the right of consumers to receive reparations that might be claimed and

---

*IT IS ORDERED: THAT the Chambersburg Gas Company, respondent, file, post and publish, effective within thirty (30) days from date of service hereof, and upon not less than one (1) day's notice to the public and this commission, a new tariff which shall contain the following rates applicable to the periods specified:

1. Rates applicable from June 1, 1929, to December 31, 1933:

|  |  | Gross | Net |
|---|---|---|---|
| First ......... | 500 C.F. | $1.10 | $1.00 |
| Next ......... | 1600 C.F. per M. | 1.45 | 1.35 |
| Next ......... | 2900 C.F. per M. | 1.25 | 1.15 |
| Excess ....... | 5000 C.F. per M. | 1.05 | .95 |

2. Rates applicable from January 1, 1934, to December 31, 1934:

|  |  | Gross | Net |
|---|---|---|---|
| First ......... | 500 C.F. | $1.10 | $1.00 |
| Next ......... | 1900 C.F. per M. | 1.45 | 1.35 |
| Next ......... | 2600 C.F. per M. | 1.30 | 1.20 |
| Excess ....... | 5000 C.F. per M. | 1.05 | .95 |

3. Rates applicable from January, 1935, and for the future:

|  |  | Gross | Net |
|---|---|---|---|
| First ......... | 500 C.F. | $1.10 | $1.00 |
| Next ......... | 2300 C.F. per M. | 1.50 | 1.40 |
| Next ......... | 2200 C.F. per M. | 1.30 | 1.20 |
| Excess ....... | 5000 C.F. per M. | 1.05 | .95 |

the amount thereof in a subsequent proceeding would be limited to a mere mathematical calculation.

Under the Public Service Company Law of this state, prior to July 1, 1933, a claim for reparations was a proceeding separate and distinct from a proceeding to test rates: N. Y. & Penna. Co. v. N. Y. Cent. R. R., 267 Pa. 64, 110 A. 286; Ben Avon Boro. v. Ohio Valley Water Co., 260 Pa. 310, 312, 103 A. 750; Centre Co. Lime Co. v. P. S. C., 96 Pa. Superior Ct. 590, differing in this respect from the federal procedure before the Interstate Commerce Commission. The Amendment of June 3, 1933, P. L. 1526, making substantial changes in the Public Service Company Law, did not become effective until July 1, 1933. By that amendment the commission has the power in certain cases, with or without a separate petition, to fix and determine the amount of refund or reparation, if any, to be paid and is to regard and treat any complaint or petition for refund or reparation as if filed on behalf of all consumers and fix and determine the amount or amounts of refund or reparation which shall be awarded. The commission very properly did not undertake here to fix reparations as the proceeding was started long before the amendment was passed and necessarily the question of reparations was not in issue.

The Public Service Company Law (Act July 26, 1913, P. L. 1374, art. V, §§3-5, inc.; 66 PS 492, 493, 511) not only prescribed a separate procedure for rate and reparation proceedings, but the decisions recognize essential distinctions in the questions involved in the two proceedings. "But awarding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private and the other public. One is made by the [Interstate Commerce] Commission in its quasi-judicial capacity to measure past injuries sustained by a private shipper; the other, in its quasi-legislative

capacity, to prevent future injury to the public": Baer
Bros. v. Denver and R. G. R. R. Co., 233 U. S. 479,
486, 34 S. Ct. Rep. 641. "It seems to be a fairly well
established common law principle that where rates have
been put into effect in good faith and maintained with-
out challenge for a considerable length of time, repara-
tion cannot be recovered, even though they have been
reduced by a competent tribunal, unless it is shown that
they have been unreasonable to the point of extortion.
The equitable powers of the courts in the protection of
patrons of public utilities from the imposition of ex-
cessive charges were considered by our Supreme Court
in Brymer et al. v. Butler Water Co., 179 Pa. 231, 250.
It was there stated that the court had authority to say:
'This charge is oppressive. You must decrease it. You
are entitled to charge a price that will yield a fair com-
pensation to you, but you must not be extortionate.'
The use of the words 'oppressive' and 'extortionate' fur-
nishes some indication of the common law conception
of an unreasonable rate and we think that meaning
still applies when rate-payers are seeking redress for
alleged private wrongs inflicted in the past": Centre
Co. Lime Co. v. P. S. C., 103 Pa. Superior Ct. 179, 190,
157 A. 815. It is to be noted, however, that we said
with reference to the matters there involved (p. 189):
"We are not dealing with a case in which a public serv-
ice company has recently made an increase in its rates
which the commission has found to be unjustifiable."

We held in the cases of Centre Co. Lime Co. v. P. S.
C., supra, and Alan Wood I. & S. Co. et al. v. P. S. C.,
97 Pa. Superior Ct. 1, that where a rate is held un-
reasonable and the commission also finds in the same
proceeding that the situation does not warrant an award
of reparations, such additional finding does not affect
in any way the right of customers of the utility to pro-
ceed for reparations. On the other hand, there are
findings in rate cases which are binding in a subsequent

proceeding for reparations. In the case of N. Y. & Penna. Co. v. N. Y. Cent. R. R., supra, a complaint had been filed to a new schedule of rates prior to its effective date. Mr. Justice SIMPSON in that case said (p. 70): "Defendant not having refunded to plaintiff the amount paid in excess of the reasonable rate as thus determined, plaintiff filed with the commission a petition setting forth the foregoing facts and the damages it had suffered, and asked for an order of reparation. Defendant attempted to re-raise the question decided in the first proceeding, but this it could not then or thereafter do, not because the facts and law there laid down were res adjudicata in the usual acceptation of that term, but because, by article VI, section 31, of the act, defendant's failure to appeal made all those rulings 'conclusive upon all parties affected thereby.' Hence, as between these parties, it was conclusively determined the complaints were in form sufficient to comply with the statute, the Pennsylvania Railroad Company was not a necessary party to the proceedings, and defendant's proposed new rates were unreasonable." These references to cases are not made for the purpose of determining in advance to what extent one claiming reparation may be affected by previous findings in a rate case, as those matters must be left for future determination when the question arises.

The objection of the appellant to the order of the commission is two-fold. It is contended first that the commission was without power in this proceeding to fix schedules of rates or tariffs for the period intervening between the filing of the complaint and the final order of the court, and second that the commission had no power to require the utility to file a tariff in accordance with the order of the commission for such period and thereby require the company to admit that such action determined the right to reparations in a fixed

amount. We will consider the questions raised in the same order.

The appellant does not attack the schedule of rates which the commission has fixed for the future, but insists that the action of the commission in prescribing a schedule or tariff of rates for the period of this contest and prior to the final order constituted an unwarranted attempt on the part of that body to prejudge anticipated claims for reparations. The problems presented to us, however, are to be determined by a consideration of what matters are relevant to the present issue and not by how any pertinent and relevant findings may affect a subsequent claim for reparations. In a complaint against rates the commission is required by the statute (Act July 26, 1913, P. L. 1374, art. V, §§3, 4; 66 PS 492, 493) to determine, after hearing, whether the rates existing or proposed are unjust, unreasonable, or inadequate, discriminatory or unduly or unreasonably preferential. If the rate is found to be unreasonable the commission must then "determine and prescribe by a specific order" the rates to be *thereafter* collected for the service to be performed. It is important to consider these two requirements separately even though they are related to each other. The primary problem of the commission in a rate case is to determine whether the rate is reasonable, etc. To determine the reasonableness of a rate it is necessary to consider fair value of the property, reasonable return, operating expenses, and like matters, but in the end all these investigations are for the purpose of determining what would be a reasonable rate. It would not be a sufficient answer to the complaint to find that the rate was reasonable or unreasonable, but the parties concerned are entitled in addition to know to what extent, if any, the rate is unreasonable. This cannot be determined without examining the schedule of rates and applying such schedule to the conditions then being examined. But frequently,

as here, higher rates may be and are charged those who consume small amounts of the commodity furnished than those using large amounts (art. III, §1 [b] ; 66 PS 152). Consequently, the graduation of the schedule and classification of service become important matters in determining the return that will be received by the utility, for such return will vary and depend upon the relative proportion of large and small consumers. A certain charge for one thousand cubic feet of gas per month might be grossly excessive for a million feet per month charged at the same rate, and such matters must be considered and the schedule examined before it can be determined that a proposed rate is unreasonable.

If it were practicable to dispose of a case such as this in a few weeks or even months, the question here presented would not arise for a rate found to be just and reasonable would ordinarily remain so for such period. Experience, however, has demonstrated that such cases require not only months but years (in this case more than six years) to reach an end. In such proceedings marked changes may take place (Scranton-Spring Brook W. S. Co. v. P. S. C., 119 Pa. Superior Ct. 117, 181 A. 77), or, as here, a new element (new taxes imposed) in operating expenses may require treatment. It would not require a stretch of the imagination to expect to find in such times as we have been experiencing for the years past that situations would arise where the rate was reasonable when attacked but unreasonable when the time was reached when a tariff could be ordered, or vice versa.

Now, if we examine the findings of the commission, we discover that what they have done is to assume that all of the elements essential to a determination of a proper rate were on the average the same for the period of this contest with the exception of a new element. By a change in the federal income tax laws, a change was effected which imposed a substantial addition to the

operating expenses of this utility. Such law did not become operative until January 1, 1934. Consequently, the commission, while it held that the rates were excessive for the entire period, recognized the fact that there was a change in the burden on the company after January 1, 1934, and that there was an additional increase in the burden by reason of a construction of the income tax law as of January 1, 1935.

The commission then constructed a tariff or schedule of rates as they were directed to do by this court affecting the future. In addition, the commission indicated by setting up schedules for two previous periods the amount by which the proposed schedule exceeded just and reasonable rates for the respective periods. We see no objection to such procedure. Just as a commission is frequently required to develop present fair value from previous findings and disclose the changes that have taken place, so in this case it was proper to indicate not only the manner in which the final conclusion was reached, but likewise the amount by which the rates were excessive for any period subsequent to the time when the company attempted to put in effect the new rates. We cannot comprehend how just complaint can be made against the action of the commission in saying not only that the rates for such period were excessive, but also indicating the amount by which they were unreasonable. The portion of the report which is complained of was not made pursuant to the mandate of the statute requiring a schedule of rates to be *thereafter* charged by the utility, but was made pursuant to the primary requirement that the commission determine whether the rates were unreasonable. We believe our conclusions do not conflict with the decisions of our Supreme Court in Ben Avon Boro. v. Ohio Valley W. Co., supra; N. Y. & Penna. Co. v. N. Y. Cent. R. R., supra; and Greensburg Boro. v. P. S. C., 268 Pa. 177, 110 A. 750.

The appellant calls attention to the fact that section 3 of the Public Service Company Law prescribes that in the event rates are found to be unreasonable they shall then fix the rates "to be *thereafter* established." The answer to this contention is, we think, apparent. The determination of reasonableness and the fixing of rates are two separate matters. The new rates are not prescribed or substituted for those of the company until it is determined that the company's rates are unreasonable. Consequently, a schedule would be established and filed by the company thereafter that is for the future. This, however, does not in any way affect the prior requirement that the commission shall first determine the reasonableness of the rates. Since an examination of the schedule and the effect of various schedules or tariffs are essential to an answer to the question, they form a part of the duties of the commission.

We are of the opinion that the commission, taking into account the time which expired before a final order could be made and the changed conditions that occurred in the interim, did not err in finding what would be fair and reasonable rates for the different periods. As we said in the case of Scranton-Spring Brook W. S. Co. v. P. S. C., supra, "There is warrant for this action where conditions justify it," citing Lindheimer v. Illinois Bell Tel. Co., 292 U. S. 151, 158, 54 S. Ct. 658, 78 L. Ed. 1182.

By article III, §7 (66 PS 261), of the statute, it is made unlawful for a public service company to furnish service without having filed a tariff. "There can be no legal rate except the last tariff rate published as provided by law: Section 7, article III; section 1 (E and F) article II; section 41, article VI; and the effective rate thus published supersedes all prior rates covering the service therein called for": Suburban Water Co. v. Oakmont Boro., 268 Pa. 243, 248, 110 A. 778. Consequently, the company is properly required, after such a proceed-

ing as this and the order of the commission, to file and post a tariff and thereby fix its rights to thereafter collect compensation and sue therefor if necessary. Such provisions, however, do not require the company to file tariffs covering past periods. In the Suburban Water Company case it was definitely held that where a complaint is filed before the thirty-day period, if the utility has complied with the provision of the statute as to notice of the time when the proposed change will go into effect, the rate becomes on the effective date an effective rate and as such it is a collectible rate or one that may be sued for. Injustice done to consumers may be worked out on petition for reparation. We believe that case supports the position of the appellant and that the commission should not have included in its order a requirement that the company should file additional tariffs showing charges for the past, and we have found no provision in the law requiring such action on the part of the company. The order of the commission, insofar as it directs the company to file tariffs for the past period, must be modified so as to eliminate that provision.

The order of the Public Service Commission as modified is affirmed.